**APPEAL NO. 24-11001**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

---

**JUSTIN T. TOLSTON**
**Plaintiff-Appellant**

**v.**

**CITY OF ATLANTA, GEORGIA, POLICE CHIEF RODNEY BRYANT, OFFICER FNU WADSWORTH, and INVESTIGATOR GARTRELL WALTON**
**Defendants-Appellees**

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

---

# APPELLEES' / CROSS-APPELLANT'S AMENDED PRINCIPAL AND RESPONSE BRIEF

---

**R. David Ware**
**Georgia Bar No. 737756**
**Phillip E. Friduss**
**Georgia Bar No. 277220**
**Nicholas A. Kinsley**
**Georgia Bar No. 273862**

**HALL BOOTH SMITH, P.C.**
**191 Peachtree Street, NE.**
**Suite 2900**
**Atlanta, GA. 30303-1755**
**Tel: 404-954-5000**
**Fax: 404-954-5020**
**dware@hallboothsmith.com**
**pfriduss@hallboothsmith.com**
**nkinsley@hallboothsmith.com**

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

CERTIFICATE OF INTERESTED PERSONS
AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1-1 of the Rules of the United States Court of Appeals for the Eleventh Circuit, the undersigned counsel for Defendants-Appellees certify that, to the best of their present information, knowledge and belief, the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships or corporations that have an interest in the outcome of this case and appeal, including subsidiaries, conglomerates, affiliates, and parent corporations, including any publicly held company that owns 10% or more of the party's stock, and other indefinable legal entities related to a party:

1. Battles, James;
2. Bryant, Rodney;
3. Callins, Joel;
4. City of Atlanta, Georgia;
5. Dickens, Mayor Andre;
6. Friduss, Phillip E.;
7. Rodney Bryant;
8. Keith Wadsworth;
9. Geraghty, Honorable Judge Sarah E.;

10. Holland, Lawrence;

11. Kinsley, Nicholas;

12. Taxpayers of City of Atlanta, Georgia;

13. Tolston, Justin T.;

14. Walton, Gartrell

15. Ware, David R.

Pursuant to 11th Cir. R. 26.1-1, Appellees certify that no publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

There are two aspects to this appeal: the appeal and the cross-appeal. For the reasons referenced below, the City of Atlanta (the "City"), Rodney Bryant, Keith Wadsworth, and Gartrell Walton (collectively, "Appellees") contend that there is no final order or judgment that would allow a direct appeal. Justin Tolston ("Appellant") also seeks to appeal prior rulings from the 12(b) stage, which Appellees also contend is improper. Conversely, Officer Keith Wadsworth's ("Cross-Appellant" or "Officer Wadsworth") claim for qualified immunity was partially denied, which gives Cross-Appellant the authority to immediately appeal that judgment.

Appellees contend that Appellant's appeal should be dismissed on procedural grounds, rendering the need for a ruling on the merits unnecessary. If the Court does so, oral argument on Appellant's numerous issues will be unnecessary. This Court will not need to consider the voluminous and fact-intensive record of the District Court. Oral argument is also unnecessary for the Cross-Appeal, which relates to the denial of qualified immunity for only two claims. However, should this Court determine that oral argument is necessary and order same, Appellees and Cross-Appellant desire to participate.

# TABLE OF CONTENTS


CERTIFICATE OF INTERESTED PERSONS ..... 2

AND CORPORATE DISCLOSURE STATEMENT ..... 2

**STATEMENT REGARDING ORAL ARGUMENT** ..... 4

**TABLE OF CONTENTS** ..... 5

**TABLE OF CITATIONS** ..... 7

I. STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES ..... 1

II. JURISDICTIONAL STATEMENT (STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION) ..... 1

III. STATEMENT OF ISSUES ..... 5

IV. STATEMENT OF THE CASE ..... 6

a. Course of Proceedings and Dispositions in the Court Below. ..... 6

b. Statement of Facts ..... 6

c. Statement of Standard or Scope of Review for Each Contention ..... 10

V. SUMMARY OF THE ARGUMENT ..... 10

VI. ARGUMENT AND CITATIONS OF AUTHORITY AS TO APPELLANT'S APPEAL 11

a. The District Court Properly Dismissed the "Doe" Defendants. ..... 12

b. The District Court Properly Dismissed Appellant's Excessive Force Claim Against the City. 12

i. *Monell* Basics ..... 13

ii. Appellant Did NOT Sufficiently Plead the Existence of a Custom or Policy. ..... 16

c. The District Court Did NOT Err by Denying Appellant's Municipal Liability Claim(s) Related to Bodyworn Cameras ..... 18

i. The City Did Not Have a Custom or Policy that Constituted Deliberate Indifference to a Constitutional Right. ..... 19

ii. Body Worn Cameras Did NOT Cause Nor Were They the Moving Force Behind Any Constitutional Violation. ..... 23

d. The District Court Properly Found that the Subject Incident Did NOT Show that the Need for Training was Blatantly Obvious. ..... 25

e. Appellant Did Not Establish *Monell* Liability in his Failure to Hire, Train, and Supervise Claim. ..... 28

f. Officer Wadsworth was acting in his discretionary authority. ..... 30

g. The District Court Did Not Abuse Its Discretion by Denying Appellant's Motion to Take Judicial Notice of the Population of the City of Atlanta. .... 34

h. The District Court Properly Granted Officer Wadsworth Summary Judgment as to Appellant's Claim for First Amendment Retaliation. .... 36

i. The District Court Correctly Applied the Law in Granting Summary Judgment Against Appellant Regarding His Malicious Prosecution Claim. .... 38

j. The District Court Properly Refused to Grant a Preliminary Injunction. .... 40

i. Appellant Cannot Show a Substantial Likelihood of Success on the Merits .... 41

ii. Appellant Cannot Show a Substantial Threat of Irreparable Injury .... 42

iii. The Threatened Injury to Appellant Does NOT Outweigh the Harm of an Injunction and an Injunction Would Disserve the Public Interest. .... 45

iv. APD.SOP.3133 Renders a Motion for Preliminary Injunction Moot or Not Ripe. 47

VII. ARGUMENT AND CITATIONS OF AUTHORITY AS TO CROSS-APPEAL .... 48

a. The District Court Erred in Denying Qualified Immunity to Cross-Appellant with Respect to Cross-Appellee's False Arrest Claim. .... 51

b. The District Court Erred in Denying Qualified Immunity to Cross-Appellant with Respect to Cross-Appellee's Excessive Force Claim. .... 55

i. To the extent Cross-Appellee Alleges that Any Use of Force to Accomplish an Unlawful Arrest is Excessive, that Claim is Subsumed by his False Arrest Claim. .... 55

ii. There Was No Constitutional Violation, Because Cross-Appellant's Use of Force Was Reasonable. .... 56

VIII. CONCLUSION .... 60

**CERTIFICATE OF COMPLIANCE** .... 60

**CERTIFICATE OF SERVICE** .... 62

# TABLE OF CITATIONS

## Cases

*Access Now, Inc. v. Southwest Airlines Co*., 385 F.3d 1324 (11th Cir. 2004) ........36

*Alcocer v. Mills*, 906 F.3d 944 (11th Cir. 2018).....................................................49

*Ashcroft v. Iqbal*, 1949, 678, 556 U.S. 662 (2009)......................................... 16, 18

*AT&T Broadband v. Tech Communications, Inc*., 381 F.3d 1309 (11th Cir. 2004) .2

*Bailey v. Wheeler*, 843 F.3d 473 (11th Cir. 2016) ..................................................37

*Bd. of Cty. Comm'rs of Bryan Cty. v. Brow*n, 520 U.S. 397 (1997 .........................26

*Brooks v. Scheib*, 813 F.2d 1191 (11th Cir. 1987).................................... 16, 17, 21

*Brown v. City of Fort Lauderdale*, 923 F.2d 1474 (11th Cir. 1991) ............... 13, 14

*Carter v. Columbus Consol. Government*, 559 Fed. Appx. 880 (11th Cir. 2014). 20, 21

*Charles v. Johnson*, 18 F.4th 686 (11th Cir. 2021) ................................................57

*Chudasama v. Mazda Motor Corp*., 123 F.3d 1353 (11th Cir. 1997).......................4

*Church v. City of Huntsville*, 30 F. 3d 1332 (11th Cir. 1994) ......................... 14, 43

*City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989)................................ 23, 25, 26

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......................................... 44, 45

*City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985) .................................... 18, 25

*Connick v. Thompson*, 563 U.S. 51 (2011) ...................................................... 17, 26

*Cottrell v. Caldwell* ...................................................................................................5

*Cozzi v. City of Birmingham*, 892 F.3d 1288 (11th Cir. 2018)......................... 52, 53

*Denham v. Corizon Health, Inc*., 675 Fed. Appx. 935 (11th Cir. 2017) .......... 19, 27

*Doran v. Salem Inn, Inc*., 422 U.S. 922 (1975) .....................................................42

*Ebrahimi v. City of Huntsville*, 114 F.3d 162 (11th Cir. 1997) ............................2, 3

*Edwards v. Giles*, 51 F.3d 155 (8th Cir. 1995) ......................................................59

*Estate of Phillips v. City of Milwaukee,* 123 F.3d 586 (7th Cir. 1997) ....................59

*Fox v. Tyson Foods, Inc.*, 519 F.3d 1298 (11th Cir. 2008).......................................4

*Garcia v. Casey*, 75 F.4th 1176 (11th Cir. 2023).................................................53

*GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359 (11th Cir. 1998) ..........13

*Gold v. City of Miami*, 151 F.3d 1346 (11th Cir.1998) .................................. 14, 15

*Gonzalez v. Gov. of Georgia*, 978 F.3d 1266 (11th Cir. 2000) ..............................45

*Graham v. Connor,* 490 U.S. 386 (1989) ...................................................... 56, 57

*Grech v. Clayton County, Ga.*, 335 F.3d 1326 (11th Cir. 2003) ............................20

*Harbert Int'l, Inc. v. James*, 157 F.3d 1271 (11th Cir 1998) ..................................32

*Henning v. Walmart Stores Inc.,* 738 Fed. Appx. 992 (11th Cir. 2018).................16

*Hill v. White*, 321 F.3d 1334 (11th Cir. 2003).......................................................10

*Holloman ex rel. Holloman v. Walker County Board of Education,* 370 F.3d 1252, 1265 (2004)........................................................................................ 31, 32, 33

*Holloman v. Harland,* 370 F.3d 1252 (11th Cir. 2004).................................... 31, 49

*Hope v. Pelzer,* 536 U.S. 730 (2002) .....................................................................50

*Hoyt v. Cooks*, 672 F.3d 972 (11th Cir. 2012)..........................................................5

*Hudson v. Hall*, 231 F.3d 1289 (11th Cir. 2000) .....................................................4

*Hutton v. Strickland*, 919 F.2d 1531 (11th Cir. 1990)...........................................34

*Jackson v. Humphrey*, 776 F.3d 1232 (11th Cir. 2015)...........................................4

*Jackson v. Sauls,* 206 F.3d 1156 (11th Cir. 2000)...................................... 55, 56, 58

*Jones v. City of Dothan, Ala.*, 121 F.3d 1456 (11th Cir. 1997)...............................60

*Jones v. Fransen*, 857 F.3d 843 (11th Cir. 2017) ....................................................4

*Keslinger ex rel. Estate of Keslinger v. Herrington*, 381 F.3d 1243, 1248 (11th Cir. 2004) ....................................................................................................34

*Khoury v. Miami-Dade County School Board*, 4 F.4th 1118 (11th Cir. 2021) .......13

*King v. Cessna Aircraft Co.*, 562 F.3d 1374 (11th Cir. 2009)..................................4

*Leach v. Hoffman*, 2022 WL 900465 (M.D. Fla. March 28, 2022).........................24

*Lee v. Ferraro,* 284 F. 3d 1188 (11th Cir. 2002)............................................. 31, 49

*Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982 (11th Cir. 1995) .41

*Lockwood v. McCaskill*, 262 N.C. 663, 670 (1964) ...............................................59

*Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263 (11th Cir. 2014)................. 10, 35

*Ludaway v. City of Jacksonville, Fla.*, 245 Fed. Appx. 949 (11th Cir. 2007)17, 19, 21

*Madiwale v. Savaiko*, 117 F.3d 1321 (11th Cir.1997)...........................................32

*Marantes v. Miami-Dade County*, 649 Fed. Appx. 665 (11th Cir. 2016) ...............21

*Marsh v. Bulter County, Ala.*, 268 F.3d 1014 (11th Cir. 2001)..............................51

*Maughon v. City of Covington*, 505 Fed. Appx. 818 (11th Cir. 2013)...................34

*McAffee v. City of Clearwater*, 2023 WL 282339, No. 22-12320 (11th Cir. 2023) ......................................................................................... 39, 40

*McCormick v. City of Fort Lauderdale*, 333 F.3d 1234 (2003) ...............................54

*McDowell v. Brown*, 392 F.3d 1283 (2004) ............................................. 18, 29, 30

*McDowell v. Brown*, 392 F.3d 1283, 1289, 91 (11th Cir. 2004) .............................18

*Mehta v. Foskey*, 877 F. Supp. 2d 1367 (S.D. Ga 2012) .........................................31

*Mercado v. City of Orlando*, 407 F.3d 1152 (11th Cir. 2005)................................21

*Merricks v. Adkisson*, 788 F.3d 553 (11th Cir. 2015)...................................... 50, 51

*Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989) ................................3

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) ..................................................................2

*Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658 (1978)............ 13, 15

*Moore v. Gwinnett County*, 967 F.2d 1495 (11th Cir. 1992)..................................57

*Pearson v. Callahan,* 555 U.S. 223 (2009) ...........................................................50

*Plaintiff A v. Schair*, 744 F.3d 1247 (11th Cir. 2014) ..............................................3

*Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993)...............................59

*Praprotnik v. City of St. Louis*, 485 U.S. at 112 (1988).................................. 14, 18

*Puerto Rico Aqueduct and Sewer Auth. v. Metcalf. & Eddy*, Inc., 506 U.S. 139 (1993) ..........................................................................................................................3

*Reed v. City of Lavonia*, 390 F. Supp. 2d 1347 (M.D. Ga. 2005). ..........................24

*Richardson v. Johnson*, 598 F.3d 734 (11th Cir. 2010)..........................................12

*Rivas-Villegas v. Cortesluna*, 595 U.S. 1 (2021)...................................... 48, 49, 50

*Roberts v. Spielman*, 643 F.3d 899 (11th Cir. 2011) ....................................... 31, 32

*Saucier v. Katz,* 533 U.S. 194 (2001) ....................................................................50

*Shehada v. Tavss*, 965 F. Supp. 2d 1358 (S.D. Fla. 2013) .....................................21

*Sherman ex rel. Sherman v. Helms*, 80 F. Supp. 2d 1365 (M.D. Ga. 2000) ...........23

*Siegel v. LePore*, 234 F.3d 1163 (11th Cir. 2000) .......................................... 41, 42

*Sierra Club v. Georgia Power Co*., 180 F.3d 1309 (11th Cir. 1999) ............... 10, 40

*Simmons v. Bradshaw*, 879 F.3d 1157 (11th Cir. 2018)................................. 15, 16

*Sims v. Metropolitan Dade County, 972* F.2d 1230 (11th Cir. 1992) .....................34

*Skop v. City of Atlanta*, 485 F.3d 1130 (11th Cir. 2007) .........................................53

*Stainback v. Dixon*, 569 F.3d 767 (7th Cir. 2009)..................................................59

*Swint v. Chambers Cnty. Comm'n,* 514 U.S. 25 (1995) ....................................4

*Taylor v. Food World, Inc.*, 133 F.3d 1419 (11th Cir. 1998) ...............................10

*Tennessee v. Garner,* 471 U.S. 1 (1985) ..........................................................57

*Thompson v. Sheriff, Pinellas County, FL*, 542 Fed. Appx. 826 (11th Cir. 2013)..17

*Tokyo Gwinnett, LLC v. Gwinnett County, Georgia*, 940 F.3d 1254 (11th Cir. 2019) ..........................................................................................................43

*Tompkins-Holmes v. Gualtieri*, 2018 WL 4568868 (M.D. Fla. March 16, 2018)...23

*U.S. v. Lambert*, 695 F.2d 536 (11th Cir. 1983) ..............................................43

*Underwood v. City of Bessemer*, 11 F.4th 1318, 1333 (11th Cir. 2021) ..............27

*United States v. Lopez-Lukis*, 102 F.3d 1164 (11th Cir. 1997) ...............................4

*Vielma v. Gruler*, 808 Fed. Appx. 872 (11th Cir. 2020).......................................12

*Vinyard v. Wilson,* 311 F.3d 1340 (11th Cir. 2002) ............................................57

*Washington v. Howard*, 25 F.4th 891 (11th Cir. 2022)........................................52

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ..........................................41

*Williams v. Aguire*, 965 F.3d 1147 (11th Cir. 2020) ..............................................5

*Williams v. Fulton County School District*, 181 F. Supp. 3d 1089 (N.D. Ga. 2016) ..........................................................................................................20

*Williamson v. Mills*, 65 F.3d 155 (11th Cir. 1995)...............................................55

**Statutes**

28 U.S.C. § 1291 ..........................................................................................2

28 U.S.C. § 1331 ..........................................................................................1

28 U.S.C. § 1367(a) .....................................................................................1

42 U.S.C. § 1983 ................................................................................. passim

F.R.A.P. 28.1(e)(2)(B)(i) ..............................................................................61

F.R.A.P. 32(a)(5)(A) ....................................................................................61

F.R.A.P. 32(f)...............................................................................................61

F.R.E. 201(b)(2) ..........................................................................................35

Federal Rule of Civil Procedure 54(b).........................................................3

## I. STATEMENT REGARDING ADOPTION OF BRIEFS OF OTHER PARTIES

Appellees and Cross-Appellant do not adopt by reference any part of any other brief.

## II. JURISDICTIONAL STATEMENT (STATEMENT OF SUBJECT-MATTER AND APPELLATE JURISDICTION)

Because Appellant asserted numerous claims under 42 U.S.C. § 1983 for alleged constitutional violations, the District Court had subject-matter jurisdiction under 28 U.S.C. § 1331. Likewise, the District Court properly exercised supplemental jurisdiction of Appellant's state law claims under 28 U.S.C. § 1367(a).

On March 14, 2024, the District Court granted in part and denied in part the summary judgment motions. (Doc. 237).[1] In that same Order, in relevant part, the District Court denied Appellant's motion for leave to amend complaint, motion for preliminary injunctive relief, motion to join Officer Lawrence Holland as an indispensable party, and motions to take judicial notice. (Doc. 237). Appellant also seeks to appeal the September 16, 2021 Order granting in part and denying in part Appellees' Motion to Dismiss. Appellant filed his Notice of Appeal on March 29, 2024 (Doc. 241) and Cross-Appellant filed his Notice of Appeal on April 2, 2024. (Doc. 249).

---

[1] Pursuant to Rule 28-5, Appellees and Cross-Appellant refer to the District Court record by referring to the document number and page number, if applicable, in the District Court.

Cross-Appellant has appealed the District Court's partial denial of his Motion for Summary Judgment, which was grounded in qualified immunity. Interlocutory appeal of the denial of qualified immunity is proper. *Mitchell v. Forsyth*, 472 U.S. 511 (1985).

Federal appellate courts are courts of limited jurisdiction.

> The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.

28 U.S.C. § 1291. Ordinarily the Eleventh Circuit has jurisdiction to review only "decisions of the district courts" that are "final." 28 U.S.C. § 1291. A final decision exists when "the rights and liabilities of all the parties to the action have been adjudicated." *Ebrahimi v. City of Huntsville*, 114 F.3d 162, 165 (11th Cir. 1997).

Time and again, the Eleventh Circuit has repeated the definition of "final" for the purpose of appeal: "A final decision is one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *AT&T Broadband v. Tech Communications, Inc.*, 381 F.3d 1309, 1314 (11th Cir. 2004) (quoting *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1368 (11th Cir. 1983)). Accordingly, appeal is precluded from any decision "'which is tentative, informal or incomplete,' as well

as from any 'fully consummated decisions, where they are but steps towards final judgment into which they will merge." *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf. & Eddy*, Inc., 506 U.S. 139, 142 (1993) (citing *Cohen v. Beneficial Indus. Loan Corp*., 337 U.S. 541, 546 (1949)).

The partial dismissal of certain claims against the parties (Doc. 29) and the grant of the City's motion for summary judgment (Doc. 237) are not final, appealable decisions in that the case against Officer Wadsworth continues onward. The "rights and liabilities of all parties to the action have not been adjudicated." *Ebrahimi,* 114 F.3d at 165. There being no jurisdiction to entertain Appellant's appeal, dismissal is warranted.

As for Appellant's appeal of having certain claims dismissed at both the Rules 12 and 56 stages of litigation, under most circumstances, interlocutory appeal is improper unless the District Court certifies the order for immediate review pursuant to Federal Rule of Civil Procedure 54(b); *Plaintiff A v. Schair*, 744 F.3d 1247, 1252-53 (11th Cir. 2014). This, because the District Court is unable at this time to execute the judgment, and for the further reasons set out below. *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989).

Regarding pendent appellate jurisdiction, on numerous occasions, appellate courts have reversed decisions to review additional issues as an exercise of pendent appellate jurisdiction in appeals from orders denying qualified immunity. *Swint v.*

*Chambers Cnty. Comm'n,* 514 U.S. 25, 41-43 (1995)*; Hudson v. Hall*, 231 F.3d 1289, 1292 n. 1, 1294 (11th Cir. 2000) (dismissing the plaintiff's cross-appeal from district court's grant of summary judgment to county and official capacity defendants, but exercising pendent appellate jurisdiction over plaintiff's cross-appeal from the partial grant of qualified immunity to officer); *see also Jones v. Fransen*, 857 F.3d 843, 850 (11th Cir. 2017) (describing the doctrine of pendent appellate jurisdiction); *Jackson v. Humphrey*, 776 F.3d 1232, 1239-40 (11th Cir. 2015) (concluding that the plaintiff could have filed a cross-appeal from district court's grant of qualified immunity); *King v. Cessna Aircraft Co*., 562 F.3d 1374, 1379 (11th Cir. 2009) (remarking that pendent appellate jurisdiction should exist "only under rare circumstances"); *see also Fox v. Tyson Foods, Inc*., 519 F.3d 1298, 1302 (11th Cir. 2008); *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1365 (11th Cir. 1997); *United States v. Lopez-Lukis*, 102 F.3d 1164, 1167 n. 10 (11th Cir. 1997). No such rare circumstances are present here.

Here, even if the District Court's grant of qualified immunity to Cross-Appellant is found to be appealable, Appellant has raised numerous other issues that are clearly unrelated to the denial of qualified immunity. For instance, the dismissal of "Doe" defendants, all municipal (i.e., *Monell*) liability claims, whether or not to take judicial notice, and injunctive relief are issues completely unrelated to Cross-Appellant's qualified immunity. If this Court decides to address all qualified

immunity issues, it should follow the guidance of *Hudson v. Hall* and only entertain those specific issues raised by Appellant.

Appellant cites to *Williams v. Aguire*, 965 F.3d 1147 (11th Cir. 2020) and *Hoyt v. Cooks*, 672 F.3d 972 (11th Cir. 2012) for the idea that this Court enjoys jurisdiction over the grant of qualified immunity. However, these cases show that the denial of qualified immunity is directly appealable but not the grant of qualified immunity. This Court has already analyzed and decided this issue: "We have no interlocutory jurisdiction to review the *grant* of summary judgment to a defendant on qualified immunity grounds. Whether we have interlocutory jurisdiction to review the *denial* of summary judgment on qualified immunity grounds depends on the type of issues involved in the appeal." *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996) (internal citations omitted) (emphasis in original).

As such, this Court should not consider Appellant's appeal and only address those issues raise by Cross-Appellant. There are no unusual or rare circumstances that lead this Court to contradict its well-settled jurisdictional principles.

## III. STATEMENT OF ISSUES

Cross-Appellant argues that the District Court erred in the following ways:

1. The District Court erred in denying qualified immunity to Cross-Appellant with respect to Cross-Appellee's false arrest claim.

2. The District Court erred in denying qualified immunity to Cross-Appellant with respect to Cross-Appellee's excessive force claim.

## IV. STATEMENT OF THE CASE

### a. Course of Proceedings and Dispositions in the Court Below.

On October 13, 2020, Appellant filed a 21-count lawsuit against the City of Atlanta, Officer Keith Wadsworth, former Atlanta Police Department Chief of Police Rodney Bryant, Atlanta Police Department Investigators Gartrell Walton and James Battle, and five John Doe officers. (Doc. 1). At the 12(b) stage, this Court dismissed six counts in this litigation and also dismissed the claims against numerous fictitious "Doe" officers. (Doc. 29). At the same time, the Court permitted fifteen Counts to proceed against numerous defendants to the discovery phase. Appellant voluntarily dismissed certain claims afterwards. The surviving claims surround allegations of excessive force, arrest without probable cause, malicious prosecution, First Amendment retaliation, and unlawful seizure of property brought pursuant to 42 U.S.C. § 1983, and attendant state law claims. Now, Appellant seeks to appeal the District Court's orders regarding Appellees' Motion to Dismiss, Appellees' summary judgment motions, Appellant's Motion to Take Judicial Notice, and Appellant's motion related to injunctive relief. (*See* Docs. 29 and 237).

### b. Statement of Facts

On October 14, 2018, Appellant attended the Atlanta Pride Festival at

Piedmont Park. (Doc. 1, pp. 5-6; Doc. 149-1, p. 58). There were thousands of attendees present. (Doc. 1, pp. 5-6). At approximately 7:00 pm, carrying an open beer in one hand and a GOTRAX electric scooter in the other, Appellant ran into Officer Lawrence Holland with his shoulder.[2] (Doc. 1, pp. 5-6; Doc. 149-1, p. 67; Doc. 153-1, Ex. 20). Officer Holland, Defendant Officer Wadsworth and another officer present were all in uniform and were standing next to each other when this happened. (Doc. 149-1, p. 75).

According to Appellant, he was walking with his scooter when he ran into Officer Holland. (Doc. 149-1, pp. 20-22, 69). Appellant says that after running into Officer Holland, he immediately apologized for having done so. (Doc. 149-1, p. 67). It is undisputed that Appellant was holding an open beer at the time, which he had purchased from a vendor and was taking it to a trash can approximately 20 feet away. (Doc. 149-1, p. 64). It is also undisputed that Appellant had otherwise consumed alcohol that day (Doc. 149-1, pp. 63-64) and accordingly smelled like it. (Doc. 153-1, p. 21).

Upon Appellant's running into Officer Holland, Holland turned, cussed Appellant, took the beer and poured it out. (Doc. 149-1, p. 68). Appellant took

---

[2] In this Complaint, Appellant's narrative attributes numerous substantive facts to Officer Wadsworth. As discovery progressed, Appellant realized he was incorrect, and testified many of those refenced facts were those of Officer Lawrence Holland. (Doc. 149-1, p. 67). This Brief presents the facts based on the evidence, and not the allegations of the Complaint.

issue. Shaking his head, Appellant challenged Officer Holland, asking, "What's going on?" (Doc. 149-1, p. 68).

For his part, Officer Holland responded by giving Appellant an out: He wanted to just let bygones be bygones, keep the peace and have everyone just move along. According to Appellant, in making his intentions clear, Officer Holland said, "Keep it fucking moving." (Doc. 149-1, p. 68). Officer Holland then took hold of Appellant's arm and began escorting Plaintiff out of the park. (Doc. 153-1, pp. 8, 77-78).

Still unsatisfied, Appellant specifically ignored the commands of the sworn peace officer. Instead of moving things along, Appellant continued the confrontation. For thirty (30) seconds, Appellant was "up in Holland's face." (Doc. 153-1, p. 35). "Why are you treating me like that?" Appellant asked. (Doc. 149-1, p. 68). Still not satisfied, Appellant continued pushing. "What is your issue…[w]hat's the problem?" he posited. (Doc. 149-1, p. 77). "Why are you being mean to me?" he continued. (Doc. 153-1, p. 38). Officer Wadsworth testified he initiated the arrest after seeing Appellant place his hands on Officer Holland during the 30-second monologue while Officer Holland attempted to escort him out of the park. (Doc. 153-1, p. 24).

According to Appellant, "the next thing I know, I'm slammed on the ground," claiming that at this point Officer Wadsworth tackled him to the ground and

handcuffed him. (Doc. 149-1, p. 68). More specifically, Officer Wadsworth took hold of Appellant's arm in an attempt to arrest Appellant. (Doc. 149-1, p. 78). Appellant and Officer Wadsworth characterized the use of force as being slammed to the ground and being taken down by a leg sweep, respectively. (Doc. 149-1, p. 68; Doc. 173-15, p. 4).

After the incident, while handcuffed, Appellant asked for the badge numbers of the officers involved. (Doc. 149-1, pp. 86-87). Although he was already arrested and handcuffed, Appellant alleges that his requests for badge numbers resulted in retaliatory detention and citation. (Doc. 1, p. 40). Regarding Appellant's scooter, it was picked up by a female officer at the time of the initial arrest (Doc. 149-1, p. 84) and then was handed to medical personnel. (Doc. 149-1, p. 186). The last time Appellant saw the scooter was when it was handed to medical personnel, and there is no evidence that Officer Wadsworth or any other police officer possessed the scooter after the initial arrest. (Doc. 149-1, p. 186).

Chief Bryant, Investigator Battles and Investigator Walton were not present during the arrest of Appellant and took no part in his arrest. (Doc. 153-1, p. 19). There is no record evidence of any wrongdoing on their parts. Despite ongoing injudicious use of the plural "Defendants" strewn throughout the Complaint, Investigator Battles' and Walton's involvement does not arise in this case until Appellant sought to file an internal affairs complaint. (Doc. 1, pp. 12-14). An

investigation did take place, and sustained complaints against Officer Wadsworth (conformance to directives – extra jobs, body-worn camera, and use of force reporting requirements); sustained complaints regarding Officer Thaddeus Joseph (conformance to directive - extra jobs, general conditions, body-worn cameras and recordings); and sustained complaints against Officer Holland (conformance to directives - body-worn cameras and recordings). (Doc. 153-2, p. 53). In partially granting Appellees' Motion to Dismiss, the Court has dismissed the failure to investigate claims. (Doc. 29, p. 30).

### c. Statement of Standard or Scope of Review for Each Contention

The District Court's grant of a motion to dismiss under 12(b)(6) for failure to state a claim is reviewed *de novo*. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). Likewise, both the grant and denial of a summary judgment motion are reviewed *de novo*. *Taylor v. Food World, Inc*., 133 F.3d 1419, 1422 (11th Cir. 1998).

A denial of a motion to take judicial notice is reviewed for an abuse of discretion, *Lodge v. Kondaur Capital Corp*., 750 F.3d 1263, 1273 (11th Cir. 2014), the same as the denial of a preliminary injunction. *Sierra Club v. Georgia Power Co*., 180 F.3d 1309, 1311 (11th Cir. 1999).

## V. SUMMARY OF THE ARGUMENT

After the Court ordered Appellant to reduce the length of his brief, he contends that the District Court erred in ten ways. Appellees can discern no central theme or unifying element of Appellant's arguments, so Appellees cannot summarize their arguments in response. Quite simply, Appellant believes the District Court committed numerous errors. To reiterate, Appellees object to Appellant's efforts to appeal non-final judgments. Appellees contend that Appellant's appeal should be dismissed on jurisdictional grounds, without the necessity of addressing the merits of the case. Nonetheless, Appellees offer a response and rebuttal to each and every enumerated error by Appellant.

In contrast, Cross-Appellant's arguments are narrowly tailored. Cross-Appellant seeks appellate review of the false arrest and excessive force claims where he was not awarded qualified immunity. These are the only two remaining claims following the District Court's summary judgment order. The District Court pointed out the differences between Cross-Appellant's and Cross-Appellee's version of the facts. This disparity was the main cause of denial of Cross-Appellant's claim for qualified immunity and Motion for Summary Judgment as to Cross-Appellee's 42 U.S.C. § 1983 claims of false arrest and excessive force. However, Cross-Appellant is entitled to qualified immunity, and thus summary judgment, even when Cross-Appellee's version of the facts is accepted as true.

## VI. ARGUMENT AND CITATIONS OF AUTHORITY AS TO APPELLANT'S APPEAL

### a. <u>The District Court Properly Dismissed the "Doe" Defendants.</u>

"As a general matter, fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). "[P]laintiffs [can] sue real parties under fictitious names only when use of a 'John Doe' label is, at the very worst, surplusage because the plaintiff's description of the defendant is sufficiently clear to allow service of process." *Vielma v. Gruler*, 808 Fec. Appx. 872, 880 (11th Cir. 2020). This Court should follow its long-standing rule and disallow fictitious pleading even though discovery may reveal the unnamed defendant's identity.

The District Court stated it well: Appellant's "'sue-first-and-sort-out-the-defendant-later approach is not how litigation works in federal court.' *Id*. at 881. Maybe he can identify the John Does and Jane Doe through discovery of his surviving claims and maybe he can then assert claims against those people. But he cannot assert claims now and hope to find a defendant later." (Doc. 29, p. 7).

*Stare decisis* dictates the dismissal of the John and Jane Doe parties, and the District Court's decision should be affirmed.

### b. <u>The District Court Properly Dismissed Appellant's Excessive Force Claim Against the City.</u>

This is the first of many challenges to the Court's rulings that Appellant failed to satisfy the *Monell* requirements.[3] The District Court dismissed Appellant's Excessive Force claim against the City on the basis that Appellant did not plausibly allege a custom of excessive force, the second element of a *Monell* claim. (Doc. 29, p. 14). To clarify, here, Appellant is seeking review of the Court's granting of Appellee's Motion to Dismiss as to his excessive force claim against the City.

#### i. ***Monell* Basics**

42 U.S.C. § 1983 liability may not be grounded in a theory of *respondeat superior*. *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658 (1978). That said, it is "well established that a municipality may be held liable under § 1983 . . . when the deprivation at issue was undertaken pursuant to [municipal] 'custom' or 'policy.'" *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479 (11th Cir. 1991). Municipal liability may be based on, among other things, "a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Khoury v. Miami-Dade County School Board*, 4 F.4th 1118, 1131

[3] Appellant seeks leniency as a pro se party. However, Appellant Justin Tolston is an attorney. His signature line indicates that he has both *juris doctor* and master of law degrees. (See, e.g., doc. 88, p. 10). He is also a member in good standing of the State Bar of Texas. Thus, Tolston does not enjoy the leniency given to other pro se litigants that have not benefited from a legal education. (*See, e.g., GJR Invs., Inc. v. Cnty. of Escambia, Fla*., 132 F.3d 1359, 1369 (11th Cir. 1998) (overruled on other grounds) ("Courts do and should show a leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education.").

(11th Cir. 2021) (internal quotations omitted). Congruently, a plaintiff may establish a policy or custom exists by showing a "persistent and wide-spread practice" and the government's actual or constructive knowledge of that practice. *Church v. City of Huntsville*, 30 F. 3d 1332, 1342–43 (11th Cir. 1994).

To prove § 1983 liability against a municipality based on custom, a plaintiff must establish a widespread practice that, "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Praprotnik v. City of St. Louis*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)). In other words, a longstanding and widespread practice is deemed authorized by the final policymaking officials because they must have known about it but failed to stop it. *Brown*, 923 F. 2d at 1481.

For the more particularized failure to train theory of *Monell* liability, a municipality is not automatically liable under § 1983 even if it inadequately trained or supervised its officers and those officers violated another person's constitutional rights. Indeed, when asserting inadequate training or supervision as the basis for liability, the plaintiff must show that: (1) the municipality failed to adequately train or supervise its officers; (2) this failure was part of an official policy or custom of failing to adequately train or supervise; and (3) the failure caused the officers to violate a person's constitutional rights. *Gold v. City of Miami*, 151 F.3d 1346, 1350

(11th Cir.1998) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389–91 (1989)).

And, since a municipality rarely will have an express written or oral policy of inadequately training or supervising its police officers, a plaintiff may prove a municipal policy or custom by showing that the municipality's failure to adequately train or supervise evidences a "deliberate indifference to the rights of persons with whom the police come in contact." *Gold*, 151 F.3d at 1350 (quoting *Canton,* 489 U.S. at 387).

More, Appellees note that their discussion above regarding § 1983's proximate cause requirement should not be treated as rote recitation of well-known principles. Instead, it highlights one of the biggest (and sometimes most overlooked) tenets of our federal statute.

> As the district court seems to have implicitly observed, the most difficult hurdle for Stephens to mount in order to succeed on his *Monell* claim against Sheriff Bradshaw is causation. The only causation argument Stephens offers is that "Sheriff Bradshaw's routine and uncritical ratification of his deputies' prior use of force 'was causally connected' to Lin's shooting of Stephens, because it sent a message to Lin and his deputies that allegations of excessive force would not be investigated." Appellant's Br. at 54. Even accepting arguendo that Sheriff Bradshaw "routinely and uncritically" ratified his deputies' use of force, it is difficult to understand how anything Sheriff Bradshaw allegedly did (or failed to do) could have been the "moving force of the constitutional violation" in this case. See *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978).

*Simmons v. Bradshaw*, 879 F.3d 1157, 1168 (11th Cir. 2018). Appellees specifically raised the causation defense as to each and every count of Appellant's Complaint. "[T]he bar to establish municipal liability is very high." *Id.* at 1169. Appellant has failed to meet that bar.

In summary, "[t]o establish municipal liability under § 1983, a plaintiff must show that: (1) his constitutional rights were violated, (2) the municipality had a custom or policy that constituted deliberate indifference to that constitutional right, and (3) the policy or custom caused the violation." *Henning v. Walmart Stores Inc.*, 738 Fed. Appx. 992, 999 (11th Cir. 2018).

**ii. Appellant Did NOT Sufficiently Plead the Existence of a Custom or Policy.**

After removing the legal conclusions from Appellant's Complaint, there are insufficient allegations to establish the existence of a custom or policy that constituted deliberate indifference to a constitutional right. *See Ashcroft v. Iqbal*, 1949, 678, 556 U.S. 662, 678 (2009); *Henning*, 738 Fed. Appx. at 999. The District Court summarized the three categories of allegations Appellant contends support his Excessive Force claim against the City: "(1) three other allegations of excessive force against the City; (2) OPS reports identifying 22 complaints of unauthorized force in 2017 and 20 such complaints in 2018; and (3) Plaintiff's own arrest." (Doc. 29, p. 14).

In the first category, the Court points out that two of the three incidents resulted in an exoneration of the officer accused. *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("Indeed, the number of complaints bears no relation to their validity."). The third occurred after the subject arrest, rendering it irrelevant. "[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice to the city and the opportunity to conform to constitutional dictates." *Connick v. Thompson*, 563 U.S. 51, 63 n. 7 (2011); s*ee Thompson v. Sheriff, Pinellas County, FL*, 542 Fed. Appx. 826 (11th Cir. 2013) ("We conclude that such post-incident complaints could not have put the Sheriff on notice of a need for supervision as of [the date of the subject incident]."); *Wright v. Sheppard*, 919 F.2d 665, 674 (11th Cir. 1990) (agreeing with the district court that there must be "evidence of a history of widespread prior abuse").

In the second category, Appellant relies on 42 allegations in 2017 and 2018 of excessive force against the City, but Appellant does not identify the percentage of the aforementioned 42 complaints were sustained. Therefore, the *Brooks* case again applies, because the sheer number of the complaints does not show their validity. *Brooks*, 813 F.2d at 1193. Nonetheless, the District Court correctly found that, as a matter of law, Appellant cited an insufficiently low number of incidents to establish a custom or policy. *See Ludaway v. City of Jacksonville, Fla.*, 245 Fed. Appx. 949, 951-52 (11th Cir. 2007) (no custom of excessive force where "between January 2004

and December 2005, there were over 170 complaints to the JSO alleging that its officers used excessive force”).

Lastly, Appellant’s reference to his own arrest is woefully insufficient to establish a custom. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (“Proof of a single incident of unconstitutional activity is insufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.”).

Although Appellant recites numerous quotations from his Complaint, he failed to establish a widespread practice that, "although not authorized by written law or express municipal policy, is 'so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Praprotnik*, 485 U.S. at 127 (1988) (quoting *Adickes* 398 U.S. at 167-68). In other words, Appellant’s “threadbare recitals” in his Complaint did not allege the requisite degree of culpability. *Iqbal*, 552 U.S. at 678; *McDowell v. Brown*, 392 F.3d 1283, 1289, 91 (11th Cir. 2004). Thus, the District Court’s finding that “none of [Appellant’s allegations]—either alone or in combination—plausibly alleges a custom of excessive force at the City” should be affirmed. (Doc. 29, p. 14).

### c. <u>**The District Court Did NOT Err by Denying Appellant’s Municipal Liability Claim(s) Related to Bodyworn Cameras**</u>

This is Appellant's main argument in support of municipal liability – that the City had a custom of body worn camera non-compliance. The District Court summarized his position well, stating that Appellant argues that the City's alleged custom of tolerating body worn camera non-compliance caused all of the constitutional violations. (Doc. 237, p. 91). The framework for *Monell* claims is outlined in detail in the immediately preceding section. Appellees reincorporate and reiterate the framework in that section as if set forth fully herein.

The first step for holding a city liable under § 1983 is to establish that constitutional rights were violated. *Denham v. Corizon Health, Inc.*, 675 Fed. Appx. 935, 940 (11th Cir. 2017). Both Appellant and Cross-Appellant have appealed the District Court's rulings as to the existence of a constitutional violation. Should this Court find that no constitutional violation occurred, the municipal liability claims cannot succeed. Second, Appellant must show that the City had a custom or policy that constituted deliberate indifference to that constitutional right. *Id.* (emphasis added). Third, Appellant must establish that the policy or custom caused the violation. *Id.* at 941.

**i. The City Did Not Have a Custom or Policy that Constituted Deliberate Indifference to a Constitutional Right.**

Appellant's argument supporting this issue is a hodgepodge of various allegations and assertions. Appellant fails to identify any official policy that

promotes the failure to activate body worn cameras. *See Ludaway v. City of Jacksonville, Fla.*, 245 Fed. Appx. 949, 951 (11th Cir. 2007). Thus, Appellant must show that the alleged violation of his constitutional rights was caused by an unofficial custom or policy that was persistent and widespread. *Carter v. Columbus Consol. Government*, 559 Fed. Appx. 880, 881 (11th Cir. 2014); *Grech v. Clayton County, Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003). The practice or custom must be so pervasive that it is the functional equivalent of a formal policy. *Id.*

For *Monell* liability, the City, a senior official, or chief policymaker must have knowledge or been aware of the pattern of deliberate indifference. *Williams v. Fulton County School District*, 181 F. Supp. 3d 1089, 1122 (N.D. Ga. 2016). No problem existed to give the City the requisite knowledge. Furthermore, many of the incidents cited by Appellant occurred or were reported after the subject incident, meaning that the City did not have actual notice of these occurrences.

**1. The OPS Reports Do Not Establish a Custom or Policy.**

The crux of Argument is 12 OPS files or investigations. (Appellant's Opening Brief, p. 33). Appellant utilizes these 12 OPS files to show that the City had knowledge of the "de facto custom" of body camera non-compliance." (Appellant's Opening Brief, p. 33). Of all the OPS files, Appellant extracted only 12 OPS files that he believes support his case. It is unclear what Appellant is trying to prove with these 12 OPS files. In some files, there is a sustained body worn camera policy

violation; in others, there is not. There is no evidence or even allegations that any investigations were insufficient. Even where body worn camera violations were sustained, it is unknown whether Appellant finds the discipline proper and appropriate. Where body worn camera violations were not sustained, Appellant does not show that the body worn camera policy was violated or that punishment would have been otherwise appropriate.

Nor does Appellant have any evidence that any such deficiency proximately caused what happened here. The allegations of fault or allegations of constitutional violations in the 12 OPS files are all over the map. "Prior incidents also must involve facts substantially similar to those at hand to be relevant to a deliberate-indifference claim. *Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013); *see also Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005) (dismissing *Monell* claim because the plaintiff could not "show that any of the [prior incidents] involved factual situations that are substantially similar to the case at hand").

Even if applicable, Appellant contends there is an insufficient number of past incidents to establish a longstanding and widespread practice or custom. *Marantes v. Miami-Dade County*, 649 Fed. Appx. 665, 672 (11th Cir. 2016); *see Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("Indeed, the number of complaints bears no relation to their validity."); *Ludaway*, 245 Fed Appx. at 951-52 (finding that a reasonable juror could not find a widespread custom of using excessive force

when there were only ten sustained complaints in two years, where all the officers were disciplined or resigned); *Carter*, 559 Fed. Appx. at 881 ("isolated incidents of unrelated disciplinary or regulatory violations do not provide evidence of a persistent or widespread practice) (internal quotations omitted).

**2. The December of 2018 Report was Produced *After* the Subject Incident.**

Appellant references a report from December of 2018, wherein the City of Atlanta Auditor's Office allegedly showed body worn camera compliance in under 50% of the videos compiled. (Appellant's Opening Brief, p. 42). However, he admitted that the auditors streamed less than 1% of the total videos captured in a two-year period. (Appellant's Opening Brief, p. 43). Without actual numbers (or at least higher numbers), Appellant cannot establish a custom or policy.

Also, Appellant uses this report to allege that the City had notice of body camera non-compliance before his arrest, because the incidents occurred before his arrest. (Appellant's Opening Brief, pp. 43-44). However, a report produced to the City after the subject incident absolutely cannot provide actual notice at the time of the subject incident. Whether or not they had notice of certain information after the subject incident is wholly irrelevant. The question is not when the prior incidents occurred; the question is when (and whether) the City's final policymaker had notice of the alleged shortcomings, and then deliberately did nothing about it.

#### ii. Body Worn Cameras Did NOT Cause Nor Were They the Moving Force Behind Any Constitutional Violation.

What is obviously lacking in Plaintiff's Response is any evidence showing that the City's policies, customs, or any other actions were the cause or moving force of any alleged constitutional violations. Municipal liability under §1983 cannot occur unless a policy or custom is the "moving force" behind a constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 379 (1989). Appellant has no evidence that failure to properly handle or activate body worn camera issues proximately caused his alleged injuries.

The law does not support Appellant's theories that not enforcing body worn camera policy or failing to train on the use of body worn cameras is the moving force behind the alleged constitutional violations. Courts have rejected this theory in previous cases regarding surveillance cameras or body worn cameras. S*ee, e.g., Sherman ex rel. Sherman v. Helms*, 80 F. Supp. 2d 1365, 1372 (M.D. Ga. 2000) ("Upon review, the Court finds that Plaintiff has failed to show that act of limiting surveillance cameras to the school's main building was the moving force behind Defendant Parker's sexual assault on LaKisha Sherman."); *Tompkins-Holmes v. Gualtieri*, 2018 WL 4568868, at *12 (M.D. Fla. March 16, 2018) ("But Tompkins-Holmes presents no case law to support that lacking body-worn cameras constitutes a failure to supervise deputies. Furthermore, there is no evidence that the lack of body-worn cameras was the 'moving force' behind Deputy Virden's shooting

Tompkins-Holmes); *Leach v. Hoffman*, 2022 WL 900465, at *18 (M.D. Fla. March 28, 2022) ("Leach has not shown any evidence of a policy or custom of not equipping deputies with body cameras. Leach has not shown that such a policy or custom was a 'moving force' behind a violation of a constitutional right, either.").

Here, there were multiple police officers present at the time of arrest and afterwards. There is no evidence that the officers agreed to deactivate their respective bodyworn cameras or even that they knew whether the other bodyworn cameras were activated. There is no evidence that the officers acted any different at any time based on the act or failure to act of activating the camera. It is summed up well by the Middle District of Georgia:

> The causation element simply has not been met with respect to this claim. Plaintiffs have not pointed this Court to any evidence that Shirley's failure to maintain the video equipment in his officers' patrol cars was the proximate cause of Reed's injuries. Officer Carlisle's camera was in working order and did in fact record the events at issue. There is no evidence that Officer Masionet believed that Carlisle's camera was inoperable, and thus would have acted differently if he knew for a fact that it was working. Carlisle likewise admits that he did not know that his camera was recording the events, but there is no evidence that he believed it was off either. Plaintiffs allegations that the officers were somehow emboldened to offend Reed's constitutional rights because they knew that their actions were not being recorded on December 25, 2001 are no more than raw speculation. Plaintiffs, accordingly, have not raised a genuine issue as to whether Shirley's failure to maintain the video equipment proximately caused Reed's injuries, and thus summary judgment in favor of the City would also be appropriate on this supervision claim.

*Reed v. City of Lavonia*, 390 F. Supp. 2d 1347, 1368-69 (M.D. Ga. 2005).

Not activating a body worn camera, not charging a body worn camera, or not being equipped with a body worn camera is not a constitutional violation. There is no constitutional requirement to film certain encounters using a body worn camera. Appellant's argument that body worn cameras caused constitutional violations cannot prevail. The City has no constitutional duty to implement body worn camera systems or to enforce any adopted policies regarding the use of body worn cameras. The City's policies, customs, training, or otherwise regarding body worn cameras did not cause nor were they the moving force behind any alleged constitutional violations.

#### d. The District Court Properly Found that the Subject Incident Did NOT Show that the Need for Training was Blatantly Obvious.

Appellant argues that the District Court erred in not finding "single-event municipal liability." (Appellant's Opening Brief, p. 51). Mixing different theories, Appellant states that "the systemic failure" of the subject incident showed "a patently obvious need for body camera training." (Appellant's Opening Brief, p. 51). In his footnote 134, Appellant cites to *City of Oklahoma City v. Tuttle,* 471 U.S. 810, 813 (1985), but the idea originates in Footnote 10 from *City of Canton v. Harris*, 489 U.S. 378 (1989).

After setting the stringent test for proving a § 1983 failure to train case, the *City of Canton* Court said, "[b]ut it may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious,

and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id*. at 390. This is where Footnote 10 comes into play:

> For example, city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1 (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.

*Id*. at 390, n. 10.

In *City of Canton*, the Supreme Court indeed acknowledged, but did not hold, that a complete failure to train, or otherwise adequately train in other circumstances, may result in a situation where the constitutional violation was so obvious that it would dispense with the need to show a pattern of violations. 489 U.S. at 390. Indeed, since *City of Canton*, the Supreme Court has articulated how narrow this hypothetical exception is. *See Bd. of Cty. Comm'rs of Bryan Cty. v. Brow*n, 520 U.S. 397, 408-15 (1997) (holding *City of Canton's* narrow exception does not apply in failure to adequately screen an employee); *Connick v. Thompson*, 563 U.S. 51, 63-71 (2011) (holding *City of Canton's* narrow exception not to apply for subordinate prosecutors' violations because it was not highly predictable that subordinate prosecutors would routinely violate constitutional rights, and because prosecutors have been to law school). The "Supreme Court has never determined that the need

for more or different training was obvious. It has given only a single hypothetical example" that is materially distinct from the facts of this case. *Denham v. Corizon Health, Inc*., 675 Fed. Appx. 935, 942 (11th Cir. 2017) (internal quotations omitted).

Here, Appellant argues that the subject incident highlights the obvious need to train because there were numerous body camera violations in the single incident. It is not "so obvious" that a failure to train more extensively on the use of body worn cameras would prevent the alleged constitutional violations. In fact, the use of body worn cameras is totally unrelated to the alleged constitutional violations at issue. Appellant cites no law or authority requiring body worn camera usage or activation. Other than his uncited personal opinions, Appellant points to nothing showing that the lack of body worn camera usage relates to the alleged constitutional violations he asserts in this case.

As for the "single-event municipal liability" theory, Appellant's citation of *Underwood v. City of Bessemer* shows the extreme rarity of "single-event municipal liability." 11 F.4th 1318, 1333 (11th Cir. 2021). Appellant does not cite to a case where the need for training is "so obvious" that a municipality is considered deliberately indifferent to the need – this is certainly not the case to stop that trend. Deadly force, as mentioned in the *City of Canton*'s hypothetical, is not at issue in this case.

In subsection G, Appellant seemingly misconstrues the "single-event municipal liability" theory, arguing that the City had a custom of bodyworn camera non-compliance based on his identification of prior incidents. (Appellant's Opening Brief, pp. 59-60). This is a different argument. Prior incidents are improper for a "blatantly obvious" need for training (i.e., single-event municipal liability). The alleged prior incidents are address above; therefore, Appellees reincorporate and reiterate their arguments raised in the immediately preceding section as if set forth herein.

Appellees simply request that this Court affirm the District Court's finding that the subject incident did not show that the need for training was blatantly obvious.

**e. Appellant Did Not Establish *Monell* Liability in his Failure to Hire, Train, and Supervise Claim.**

Specifically, Appellant asserts that "the district court erred when it found that [Appellant] did not establish an independent claim for municipal liability regarding the failure to hire, train, supervise, and discipline officers via the underfunding and understaffing of the Office of Professional Standards" (OPS). (Appellant's Opening Brief, p. 60). The District Court dismissed the failure to investigate claims following Appellees' Motion to Dismiss. (Doc. 29, p. 30).

To be clear, an investigation of the subject incident did take place, and complaints were sustained against Officer Wadsworth (conformance to directives – extra jobs, body-worn camera, and use of force reporting requirements); Officer

Thaddeus Joseph (conformance to directive - extra jobs, general conditions, body-worn cameras and recordings); and Officer Holland (conformance to directives - body-worn cameras and recordings). (Doc. 153-2, p. 53).

Appellant's theory is that having five investigators "is patently deficient in its face," and, as the theory goes, the Court should hold the City liable for a failure to hire and fund internal affairs. (Appellant's Opening Brief, p. 65). This addresses Appellant's failure to hire claim, but his failure to train and/or supervise claims are not apparent.

Regarding the alleged understaffing or underfunding of the Office of Professional Standards (OPS), Chief Bryant explained that the OPS is adequately staffed but additional investigators would allow for more expedited investigations. (Doc. 153-2, p. 109). The OPS is appropriately budgeted. (Doc. 153-2, p. 111). There is no evidence or testimony to the contrary. Regardless, an increased budget would not provide him with additional personnel. (Doc. 153-2, p. 111). More money would not result in increased staffing; that change would need to come from Human Resources. (Doc. 153-2, p. 112).

The case cited by Plaintiff, *McDowell v. Brown*, actually rejects a theory that the county's understaffing of the jail was sufficient for *Monell* liability. 392 F.3d 1283, 1290-91 (11th Cir. 2004). "The fact that the Board's budget practices resulted in understaffing does not amount to a purposeful disregard which would violate any

citizen's constitutional rights. McDowell may not infer a policy merely because harm resulted from some interaction with a governmental entity." *Id*. at 1293 (internal citations omitted).

Appellant's chief complaint is that the alleged understaffing of the OPS essentially made it impossible to *timely* complete investigations. Appellant relies upon the deposition testimony of Chief Bryant, where he states that excessive force investigations should not take more than one year, yet the investigation of Officer Wadsworth was completed in a year and a half. Assuming for the sake of argument that Appellant established that the City understaffed the OPS which resulted in delayed investigation, there is no connection between the delayed investigations and the failure to use bodyworn cameras and then a constitutional violation.

There is no evidence showing that untimely investigations resulted in officers failed to properly use bodyworn cameras which resulted in constitutional violations. In other words, there is no link between Appellant's alleged injury(ies) and the City's budget decision. The District Court correctly stated that "[t]o 'test the link' between a plaintiff's injury and the municipality's budgetary decision, a court should look to whether the City 'should have known that [plaintiff's] injuries were a 'plainly obvious consequence' of that decision.' *Id.* (quoting *Brown*, 520 U.S. at 412)." (Doc. 237, p. 98). Here, Appellant has not showed this "link."

**f. <u>Officer Wadsworth was acting in his discretionary authority.</u>**

To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro,* 284 F. 3d 1188, 1194 (11th Cir. 2002). A discretionary duty is one that is "of a type that [falls] within the employee's job responsibilities." *Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir. 2004). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee,* 284 F. 3d 1188, 1194 (11th Cir. 2002).

Unlike in other areas of the law, qualified immunity's discretionary authority review has nothing to do with the traditional "discretionary function/ministerial task" dichotomy. *Holloman ex rel. Holloman v. Walker County Board of Education,* 370 F.3d 1252, 1265 (2004). Instead, for qualified immunity purposes, discretionary authority encompasses a government official's actions undertaken pursuant to performance of his duties and within the scope of his authority. *Roberts v. Spielman*, 643 F.3d 899, 903 (11th Cir. 2011). Discretionary authority is clear when the official is performing a legitimate job-related function within the power of the law enforcement body. *Mehta v. Foskey*, 877 F. Supp. 2d 1367, 1373 (S.D. Ga 2012). The term "discretionary authority" "include[s] all actions of a governmental official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" *Roberts v. Spielman*, 643

F.3d 899, 903 (11th Cir. 2011).

As to the first prong, courts do not ask whether it was within a defendant's authority to violate a suspect's Constitutional rights. *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir 1998) ("[W]e d[o] not ask whether it was within the defendant's authority to suspend an employee for an improper reason; instead, we asked whether [the defendant's] discretionary duties included the administration of discipline."

> Similarly, in assessing whether a police officer may assert qualified immunity against a Fourth Amendment claim, we do not ask whether he has the right to engage in unconstitutional searches and seizures, but whether engaging in searches and seizures in general is a part of his job-related powers and responsibilities. See, e.g., *Madiwale v. Savaiko*, 117 F.3d 1321, 1324 (11th Cir.1997). Put another way, to pass the first step of the discretionary function test for qualified immunity, the defendant must have been performing a function that, but for the alleged constitutional infirmity, would have fallen with his legitimate job description.

*Holloman ex rel. Holloman,* 370 F.3d at 1266. Arresting suspects, utilizing force in order to do so, writing out tickets for violations of the law and ordinances, training, responding to board oversight on issues of use of force, etc. – all actions of the Individual Defendants here fall within their legitimate job functions. *See Holloman ex rel. Holloman,* 370 F.3d at 1267 ("Though Allred is not empowered to violate constitutional rights as part of her official duties, she did have the responsibility of maintaining decorum in the classroom.").

Next, the Court must determine whether in executing that job-related function

– that is, pursuing his job-related goals – in an authorized manner. *Id.* at 1265. Each government employee is given only a certain "arsenal" of powers with which to accomplish his/her goals. *Id.* at 1267. In exercising their job-related goals of keeping peace and maintain order, for example here, at a public park during a big festival, police officers have in their arsenal various methods of effectuating an arrest to include the use of physical force, and also have basic powers of arrest, and issuing citations for various violations of city ordinance(s). Again, the query does not surround the constitutionality of those actions – that query comes much later.

> Though Allred is not empowered to violate constitutional rights as part of her official duties, she did have the responsibility of maintaining decorum in the classroom. The fact that she may have attempted to keep order in the classroom in an unconstitutional manner does not change the fact that she was fulfilling a legitimate job-related function. Moreover, the ways in which she attempted to pursue this job-related goal (chastising Holloman and reporting him to the principal)-examined on a general level rather than in this specific application-were legitimate prerogatives of her job.

*Id*. The second, prong, too, is satisfied. All actions of Officer Wadsworth were taken pursuant to his discretionary authority.

Here, Appellant has two main arguments. First, he asserts that retaliating against an individual asking for a badge number and maliciously filing three charges against an individual for engaging in protected speech are not within an officer's discretionary authority. This is a misunderstanding of the discretionary authority requirement. "A government official proves that he acted within the purview of his

discretionary authority by showing objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority." *Hutton v. Strickland*, 919 F.2d 1531, 1537 (11th Cir. 1990). The issue is not whether Officer Wadsworth violated the law. The Eleventh Circuit has held that "position untenable. It merely equates the question of whether the defendants acted lawfully with the question of whether they acted within the scope of their discretion. The issues are distinct." *Sims v. Metropolitan Dade County, 972* F.2d 1230, 1236 (11th Cir. 1992).

There is no doubt that Officer Wadsworth was acting with discretionary authority in making the arrest of Appellant. *Maughon v. City of Covington*, 505 Fed. Appx. 818, 822 (11th Cir. 2013). In *Keslinger ex. Rel. Estate of Keslinger v. Herrington*, an off-duty law enforcement officer was deemed to be acting within the scope of his discretionary authority when he intervened in a suicide attempt. 381 F.3d 1243, 1248 (11th Cir. 2004). From these cases, it is apparent that Officer Wadsworth working an unauthorized shift does not mean that he was not acting within the scope of his discretionary authority. Arresting and detaining Appellant was within Officer Wadsworth's job-related functions and had the power to make and effectuate that decision.

g. **The District Court Did Not Abuse Its Discretion by Denying Appellant's Motion to Take Judicial Notice of the Population of the City of Atlanta.**

The District Court's refusal to take judicial notice is reviewed under an abuse of discretion standard. *Lodge*, 750 at 1273. Taking judicial notice is "a highly limited process." *Shahar v. Bowers*, 120 F.3d 211, 214 (11th Cir. 1997). "The reason for this caution is that the taking of judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court." *Id*.

The District Court properly denied Appellant's Motion to Take Judicial Notice "That the City of Atlanta is Home to Approximately 500,000 Citizens." (Doc. 237, p. 104). Appellant provides an estimation, not an actual number. He did not ask the District Court to take judicial notice of census data or that the population was more or less than 500,000. Instead, he asks the Court to take judicial notice that the population is "approximately" 500,000. This is not a fact. It cannot "be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." F.R.E. 201(b)(2). What one person considers "approximately 500,000" may differ significantly from what another person considers "approximately 500,000." Thus, this information cannot be accurately determined and confirmed and it is not a universal truth.

Furthermore, the subject incident occurred on October 14, 2018. (Doc. 213, p. 3). Thus, the City of Atlanta's current population, 2020 population, and the 2010

population are irrelevant to the population on October 14, 2018 or the date of any alleged prior incidents used to support Appellant's *Monell* claim(s).

Appellant's motion was appropriately denied.

### h. <u>The District Court Properly Granted Officer Wadsworth Summary Judgment as to Appellant's Claim for First Amendment Retaliation.</u>

Appellant presents a new argument to this Court in an effort to resurrect his First Amendment retaliation claim against Officer Wadsworth. *See, e.g., Access Now, Inc. v. Southwest Airlines Co*., 385 F.3d 1324, 1331 (11th Cir. 2004) (stating that issues "raised for the first time in an appeal will not be considered"). Appellant merges his First Amendment retaliation claim with a Fourth Amendment failure to intervene claim and a Fourth Amendment prolonged seizure claim.

He contends that Officer Wadsworth "*took part* in the prolonged detention" (Appellant's Opening Brief, p. 76) (emphasis added) and he "*allowed* [Appellant] to be restrained again following the protected speech." (Appellant's Opening Brief, p. 77) (emphasis added). This, the District Court points out that the bodyworn camera footage shows that Officer Holland, not Officer Wadsworth, physically restrained him following Appellant's request for badge numbers. (Doc., 237, p. 83). There is no evidence that Officer Wadsworth's conduct was in any way related to Appellant's speech.

Regardless of Officer Wadsworth's participation, Appellant's First Amendment retaliation claim still fails. "To state a claim for retaliation under the First Amendment, a plaintiff must demonstrate that (1) he engaged in protected speech; (2) the defendant's conduct adversely affected the protected speech; and (3) a causal connection exists between the speech and the defendant's retaliatory actions." *Bailey v. Wheeler*, 843 F.3d 473, 480 (11th Cir. 2016). Assuming Appellant's speech was protected, he cannot get past the next two requirements. Appellant was already well under arrest when he began asking for badge numbers. Factually then, there was no retaliation as the allegedly infirm actions had already taken place (which also means there is no causation).

First, Appellant makes contact with Officer Holland while holding an open container of beer. (Doc. 172, p. 4). Further discussion ensued and Appellant was then handcuffed and arrested. (Doc. 172, pp. 5-6). *Afterwards*, Appellant is subsequently uncuffed and he asks for the officers' badge numbers. (Doc. 172, p. 6). Appellant assumes he "was likely being released at that moment," but he has no evidence to support this notion. (Doc. 172, p. 53). Officer Holland then says, "He's gonna take a ride." (Doc. 172, p. 6). Appellant is separated from the other officers by the supervising officer who supposedly offered "[Appellant] a quid pro quo." (Doc. 172, p. 7). The "quid pro quo" was not stated explicitly, but Appellant thought that the officer implied that he would make the arrest go away if the Appellant did

not file a complaint. (Doc. 172, p. 53). There is no explicit or circumstantial record evidence of a *quid quo pro* offer. Even if there was, it is unclear how such would violate Plaintiff's First Amendment speech.

Thus, there was no retaliation for protected speech. As demonstrated above, Appellant was arrested before he requested badge numbers. The charges arise from facts that occurred before Appellant's arrest and request for badge numbers. Appellant's "protected speech" does not preclude the charges that cause his arrest in the first place.

**i. <u>The District Court Correctly Applied the Law in Granting Summary Judgment Against Appellant Regarding His Malicious Prosecution Claim.</u>**

Simply put, Appellant was not arrested pursuant to a warrant, nor was he seized after the arraignment, indictment, or probable-cause hearing. In other words, there is no evidence of Appellant being seized after the commencement of his criminal case. Thus, the proper cause of action under the facts alleged by Appellant is false arrest, not malicious prosecution.

As an initial matter, even though Appellant styled his claim as "abuse of process and malicious prosecution," the District Court held that Appellant abandoned any abuse of process claim. (Doc. 237, p. 86 n. 50). This does not appear to be in dispute – Appellant seeks to bring a claim one claim, pointing out that it is

unsettled whether it should be styled as an abuse of power or malicious prosecution claim.

Appellant's argument is unclear at best – he goes back-and-forth between a malicious prosecution argument and a First Amendment retaliation argument. Although Appellant dedicates a lot of space to making this argument, it can easily and quickly be disposed of, because Appellant seemingly misunderstands the District Court's ruling. While Appellant argues that the arrest or detention resulted without probable cause, this is not at issue. At issue is whether the arrest was pursuant to a warrant or was warrantless. It was warrantless. In allowing Appellant's false arrest claim to survive and dismissing his malicious prosecution, the District Court stated that Appellant has failed to show the existence of a seizure pursuant to legal process. (Doc. 237, p. 84).

For a malicious prosecution claim, the complaining party must show that the Fourth Amendment violation was a "seizure[] pursuant to legal process." *McAffee v. City of Clearwater*, 2023 WL 282339, No. 22-12320, at *2 (11th Cir. 2023) (internal quotations omitted). This Court has explained:

> We have previously identified the types of deprivations of liberty that qualify as seizures pursuant to legal process and give rise to § 1983 malicious prosecution claims. *See Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020). We have recognized that "warrant-based seizures" as well as "seizures following an arraignment, indictment, or probable-cause hearing" qualify as seizures pursuant to legal process. Id. In contrast, a plaintiff who is subjected to a warrantless arrest but is not detained after the commencement of judicial proceedings generally

> does not suffer a seizure pursuant to legal process. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1235 (11th Cir. 2004). Although a person suffers a seizure at the time of the warrantless arrest, the seizure is not pursuant to legal process because it "occur[s] prior to the time of arraignment" and the commencement of the judicial proceedings. *Id.*\

*McAffee*, 2023 WL 282339, No. 22-12320, at *2.

The District Court correctly awarded summary judgment to Appellees regarding this claim.

**j. <u>The District Court Properly Refused to Grant a Preliminary Injunction.</u>**

"The grant or denial of a preliminary injunction is a decision within the sound discretion of the district court. On appeal from the grant or denial of a preliminary injunction, we do not review the intrinsic merits of the case. It is the function of the trial court to exercise its discretion in deciding upon and delicately balancing the equities of the parties involved. A preliminary injunction is a 'drastic' remedy, and we will disturb the denial of a preliminary injunction only if the district court abused its discretion." *Sierra Club*, 180 F.3d at 1311.

Appellant did not actually move for a preliminary injunction, he moved "for a hearing on preliminary injunctive relief to: restrain or enjoin officers of the Atlanta Police Department from deactivating their body worn cameras at any point while interacting with a citizen who is detained or in their custody." (Doc. 202, p. 1). In the alternative, Appellant requested a "consolidated hearing for permanent injunctive relief and bifurcated bench trial on the merits." (Doc. 202, p. 1). At the

end of his motion, Appellant asked the District Court to grant "the attached injunction in *abstentia*" and his "request for an evidentiary hearing on the injunctive relief." (Doc. 202, pp. 27-28).

If Appellant's request is interpreted as one for a preliminary injunction, the following must be established for Appellant to obtain a preliminary injunction: "(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction were not granted; (3) that the threatened injury to the plaintiffs outweighs the harm an injunction may cause the defendant; and (4) that granting the injunction would not disserve the public interest." *Levi Strauss & Co. v. Sunrise Intern. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (internal quotations omitted). Courts must pay particular attention to the public consequences of an injunction, because it is an extraordinary and drastic remedy. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982); *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

**i. Appellant Cannot Show a Substantial Likelihood of Success on the Merits**

Appellant's underlying claims have a very low likelihood of success and do not entitle him to a preliminary injunction. The claims in Appellant's Complaint, although numerous, did not arise out of the failure to use body worn cameras. He asserts claims for excessive force, false arrest, malicious prosecution, and failure to hire and train. (Doc. 202, p. 2). These claims do not relate to or arise out of the use

of body worn cameras. This makes sense, as there is no requirement obligating police departments to implement body worn cameras or for officers to activate (or not deactivate) body worn cameras. Appellant has identified no statute, case, or constitutional provision stating otherwise. In other words, Appellant has not shown any law, regulation or other requirement mandating the conduct that is requested in his proposed injunction, because there is none.

There is no law, regulation, authority, or other requirement that the City implement a body worn camera system or policy. Likewise, there is no requirement that an officer confirm the operation of a body worn camera for every citizen interaction. Therefore, Appellant's claims, whether or not he succeeds on the damages claims, do not support the granting of his proposed injunction.

#### ii. Appellant Cannot Show a Substantial Threat of Irreparable Injury

Appellant has not and cannot show that an irreparable injury will be suffered without the injunction. "The traditional standard for granting a preliminary injunction requires the plaintiff to show that in the absence of its issuance he will suffer irreparable injury . . . ." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 931 (1975). The Eleventh Circuit requires a party to at least show that he "faces a substantial likelihood that he will suffer [] irreparable injury." *Siegel v. LePore*, 234 F.3d 1163, 1176 n. 9 (11th Cir. 2000).

Moreover, a moving party must have standing to seek injunctive relief. "To establish Article III standing, a prerequisite to invoking federal jurisdiction, a plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Tokyo Gwinnett, LLC v. Gwinnett County, Georgia*, 940 F.3d 1254, 1262 (11th Cir. 2019) (internal quotations omitted).

Specifically, a party has standing to seek injunctive relief upon proof of "a real and immediate—as opposed to a merely conjectural or hypothetical—threat of a *future* injury." *Church v. City of Huntsville*, 30 F.3d 1332, 1337 (11th Cir. 1994) (emphasis in original). The *Church* court goes on to explain:

> Logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past. Although past wrongs are evidence bearing on whether there is a real and immediate threat of repeated injury, [p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.

*Id*. (internal quotations and citations omitted).

It is well established that the irreparable injury must be suffered by the moving party. *See U.S. v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983) (stating that granting a preliminary injunction requires the court to exercise its discretion on four prerequisites, including that "the Appellant will suffer irreparable injury if the injunction is not granted"). "Appellants must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the

presentation of issues' necessary for the proper resolution of constitutional questions." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

An increased likelihood of unconstitutional conduct is completely speculative and generalized to the public. The loss of evidentiary material is completely irrelevant to Appellant and the case at hand, where the subject incident occurred in 2018. Therefore, any injunction about the use of body worn cameras in the future does not affect Appellant or this case.

Appellant's brief shows he is domiciled in Austin, Texas. (Appellant's Opening Brief, p. 91). He previously resided in Omaha, Nebraska. (Doc. 202, p. 28). The subject incident occurred on October 14, 2018 (Doc. 1, p. 2). Other than his unclear argument about the possibility of filing documents personally if he cannot mail them, Appellant does not assert that he will return to Atlanta. Thus, there is not a substantial threat or risk of irreparable injury.

Furthermore, the Supreme Court of the United States has disapproved of granting a preliminary injunction based on police possibly using unconstitutional actions (to be clear, deactivating a body worn camera is not unconstitutional) against Appellant. *See id.* (quoting and citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105-06 (1983)). Such a theory would have to be supported by allegations that APD officers *always* deactivated their body worn cameras or that the City ordered or

authorized APD officers to do so. *Lyons*, 461 U.S. at 106. Those allegations cannot be made in the current situation.

In *Lyons*, a case actually cited by Appellant, the plaintiff sought damages, injunctive relief, and declaratory relief when he was stopped for a traffic or vehicle code violation and received a "chokehold" rendering him unconscious. *Id*. at 97-98. He alleged that the city regularly and routinely used these chokeholds in innumerable situations, even when the officers are not threatened by deadly force. *Id*. at 98. The plaintiff was found not to have standing for his equitable claims because he failed to establish "irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Id*. at 111. "The speculative nature of [the plaintiff's] claim of future injury require[d] a finding that this prerequisite of equitable relief has not been fulfilled." *Id*. The *Lyons* court makes clear that perceived threats by police officers do not warrant an injunction.

#### iii. The Threatened Injury to Appellant Does NOT Outweigh the Harm of an Injunction and an Injunction Would Disserve the Public Interest.

Because the City is the opposing party, the third and fourth elements merge. *Gonzalez v. Gov. of Georgia*, 978 F.3d 1266, 1271 (11th Cir. 2000). At the outset, Appellees point out that the alleged injury to Appellant if the injunction is not issued is very little, if at all. Thus, the threatened injury does not outweigh the harm to the

City if an injunction is granted. The third and fourth factors of whether to grant a preliminary injunction weigh against granting an injunction. The harm of the proposed injunction to the City and to the public at large outweighs the threatened injury alleged by Appellant.

The federal and state legislators have not adopted legislation mandating something similar to the proposed injunction. This highlights the harms of a mandatory body worn camera policy. First, body worn cameras are expensive. Appellant's proposed injunction mandates each officer maintain an operable camera. It is unclear what happens if the camera malfunctions or stops working during a shift. There are also privacy concerns with the injunction – recording every encounter with a citizen would potentially expose victims and subject them to facial recognition. It could also lead to improper recordings of minors. Third, body worn cameras could decrease the safety of police officers – for example, such an injunction that lacks any exceptions could distract officers from performing proper police activity.

Violating an injunction could result in sanctions for contempt. It is unclear whether each individual officer would be subject to punishment under the proposed injunction or only the City. Regardless, as written, an officer and/or the City would be subject to a contempt order for accidental violations of the body worn camera injunction. The proposed policy would result in less police activity and more

distracted police officers. Appellees and the public would be significantly harmed by this injunction.

In contrast, as demonstrated above, Appellant would suffer very little, if any, injuries if the denial of an injunction is affirmed. It is unnecessary to re-hash those arguments. Because the harm created by the proposed injunction to Appellees and the public outweigh the injuries to Appellant if the injunction is rejected, his motion should be denied.

**iv. APD.SOP.3133 Renders a Motion for Preliminary Injunction Moot or Not Ripe.**

The Atlanta Police Department maintains its own policy mandating all sworn employees issued a body worn camera to use the camera during the course of regular duty, approved overtime, and extra job duties for the purpose of obtaining potential evidence. (Doc. 153-2, p. 240). In addition, it assigns enforcement responsibility to the Chief of Police, division and section commanders, unit commanders, and sworn supervisors. (Doc. 153-2, pp. 240-41). It requires training on using said cameras. (Doc. 153-2, p. 242). The policy lists fifteen situations where body worn cameras are mandated to be put in recording mode. For the sake of the Court's time, Defendants will not list these requirements. However, APD.SOP 3133 is available at Doc. 153-2, p. 240. Importantly, APD.SOP. 3133 also includes a section related to discipline for violating the policy. (Doc. 153-2, p. 247).

This latest cited version of APD.SOP 3133 was approved and signed on May 5, 2021, over two years before Appellant's request for an injunction. It served as simply a revised version of the policy that was in place at the time of the subject incident. In fact, the previous version of APD.SOP 3133 also required use of body worn cameras when the officers were doing extra jobs. (Doc. 173-18, p. 7, ¶ 4.7). Thus, the City nor APD voluntarily adopted these policies in response to Appellant's action or motion for an injunction.

For all of the foregoing reasons, the District Court properly denied a preliminary injunction regarding the use of bodyworn cameras.

## VII. ARGUMENT AND CITATIONS OF AUTHORITY AS TO CROSS-APPEAL

Cross-Appellant Officer Keith Wadsworth sought summary judgment as to all claims against him in this matter, arguing that he is entitled to qualified immunity. The District Court did not award Cross-Appellant qualified immunity and summary judgment as to Cross-Appellee's 42 U.S.C. § 1983 fourth amendment claims for false arrest and excessive force. Cross-Appellant now appeals these judgments.

Under federal law, qualified immunity offers complete protection for a government employee sued in his individual capacity when his or her conduct does not violate clearly established constitutional or statutory rights that a reasonable person would have known. *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021). "A right is clearly established when it is 'sufficiently clear that every official would

have understood that what he is doing violates that right.'" *Id*. (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law." *Lee v. Ferraro,* 284 F. 3d 1188, 1194 (11th Cir. 2002). To receive qualified immunity, "the public official must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Id.* A discretionary duty is one that is "of a type that [falls] within the employee's job responsibilities." *Holloman v. Harland,* 370 F.3d 1252, 1265 (11th Cir. 2004). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee,* 284 F. 3d 1188, 1194 (11th Cir. 2002).

Once Cross-Appellant establishes that his actions were within his discretionary authority, *the burden shifts to Appellant* to prove the shield of qualified immunity should be pierced. *Id.*; *Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018). "Overcoming the official's qualified-immunity defense requires a plaintiff to establish both that the officer's conduct violated a constitutionally protected right and that the right was clearly established at the time of the misconduct." *Id.* at 951.

Regarding Appellant's burden, the United States Supreme Court has established a two-part test for the application of qualified immunity. Use of the label

*two-part test* is a bit of a misnomer at this stage in history, as now this Court has the discretion as to which of the two-parts it resolves first. *Pearson v. Callahan,* 555 U.S. 223 (2009). The salient feature of either part of the test is whether there is evidence sufficient to establish a constitutional violation. *Hope v. Pelzer,* 536 U.S. 730, 736 (2002). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiry." *Saucier v. Katz,* 533 U.S. 194, 201 (2001) (pre-*Callahan,* as to order of review only).

In and of itself, though, the finding of a Constitutional tort does not necessitate stripping qualified immunity from an individual officer. Recognizing that civil liability protections need be given individual officers in close-call situations, the United States Supreme Court requires that the parameters of a plaintiff's rights be clearly established, such that *every reasonable officer* would understand that what he has done violates *clearly established law. Rivas-Villegas*, 501 U.S. at 5.

Taken together, the two tests show that even if this Court finds a Constitutional violation has occurred, it doesn't mean we proceed to trial. Appellant still has the burden to point to appropriate clearly established law governing the circumstances present.

For the law to be clearly established, it must be the law at the time of the incident. *Merricks v. Adkisson*, 788 F.3d 553, 559 (11th Cir. 2015). The Court should "compare the facts of the case before the court that allege a constitutional

deprivation with those cases that the party opposing the motion contends show the clearly established nature of the law. *Id.* The Eleventh Circuit has explained:

> For qualified immunity purposes, a preexisting precedent is materially similar to the circumstances facing an official when the specific circumstances facing the official are enough like the facts in the precedent that no reasonable, similarly-situated official could believe that the factual differences between the precedent and the circumstances facing the official *might* make a difference to the conclusion about whether the official's conduct was lawful or unlawful, in the light of the precedent. Thus, every fact need not be identical. But minor variations in some facts (the precedent lacks an arguably significant fact or contains an additional arguably significant fact not in the circumstances now facing the official) might be very important and, therefore, be able to make the circumstances facing an official materially different from the preexisting precedents, leaving the law applicable—in the circumstances facing the official—*not* clearly established when the defendant official acted.

*Marsh v. Bulter County, Ala.*, 268 F.3d 1014, 1032 (11th Cir. 2001) (abrogated on other grounds).

All relevant actions of Cross-Appellant were taken pursuant to his discretionary authority. While Cross-Appellee asserts that Cross-Appellant's arrest of Cross-Appellee was not within his discretionary authority, this assertion is addressed in Section VI(f) above. Moreover, the District Court was correct in holding that Cross-Appellee was acting within the scope of his discretionary authority during the subject incident. (Doc. 237, p. 44).

**a. <u>The District Court Erred in Denying Qualified Immunity to Cross-Appellant with Respect to Cross-Appellee's False Arrest Claim.</u>**

Reviewing this ruling *de novo*, the Court should reverse the District Court's order denying qualified immunity and summary judgment as to Cross-Appellee's false arrest claim. Cross-Appellee alleges that Cross-Appellant is liable under 42 U.S.C. § 1983 for unlawfully arresting and unreasonably seizing him in violation of the Fourth Amendment. (Doc. 1, ¶ 197). Appellant was cited for: (1) being disorderly under the influence, (2) prohibited conduct in a park, and (3) obstruction. (Doc. 117-5). Specifically, he alleges that there was no probable cause to charge him with violations of Georgia law. (Doc. 1, ¶ 199). Probable cause exists when "the facts, considering the totality of the circumstances and viewed from the perspective of a reasonable officer, establish 'a probability or substantial chance of criminal activity.'" *Washington v. Howard*, 25 F.4th 891, 898-99 (11th Cir. 2022) (quoting *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018)). "Probable cause does not require conclusive evidence and 'is not a high bar.'" *Id*. at 899 (quoting Wesby, 583 U.S. at 57).

However, "[i]n the context of § 1983 claims . . . an officer may be entitled to qualified immunity even if there was no actual probable cause for the arrest; instead, an officer who raises a qualified immunity defense will prevail if there was arguable probable cause." *Cozzi v. City of Birmingham*, 892 F.3d 1288, 1293-94 (11th Cir. 2018) (abrogated in part by *Washington v. Howard*, 25 F.4th 81, 899-900 (2022). "Arguable probable cause exists where reasonable officers in the same circumstances

and possessing the same knowledge as the [d]efendant could have believed that probable cause existed to arrest." *Id*. at 1294 (internal quotations omitted). The arguable probable cause standard "recognizes that law enforcement officers may make reasonable but mistaken judgments regarding probable cause but does not shield officers who unreasonably conclude that probable cause exists." *Skop v. City of Atlanta*, 485 F.3d 1130, 1137 (11th Cir. 2007).

> Under the "any-crime rule" an officer is insulated from false-arrest claims so long as probable cause existed to arrest the suspect for some crime, even if it was not the crime the officer thought or said had occurred. Applying the "any-crime rule" to qualified immunity, an officer is entitled to qualified immunity if he had arguable probable cause to arrest a suspect for any crime, even if that crime was not the offense announced by the officer at the time of the arrest.

*Garcia v. Casey*, 75 F.4th 1176, 1187 (11th Cir. 2023) (internal quotations and citations omitted).

The District Court details the facts asserted by both parties for and against summary judgment. Then, the District Court summarizes what it believes to be the relevant facts as follows:

> If Tolston's account is to be believed, his conduct consisted of (1) an accidental shoulder bump at a crowded festival (for which he immediately apologized), (2) possession of a beer at a festival (at which patrons could lawfully purchase alcohol), (3) a few simple inquiries as to why Officer Holland had poured out his beer and cursed at him, and (4) his decision to ask these questions instead of obeying instantly the officer's direction to "keep it [ ] moving."

(Doc. 237, pp. 66-67).

However, the District Court left out essential facts. Cross-Appellant heard Officer Holland tell Cross-Appellee to move or keep going, but Cross-Appellee instead asked multiple questions. (Doc. 170, p. 4). Moreover, Cross-Appellant testified that Cross-Appellee placed his hands on Officer Holland, specifically that Cross-Appellee "grabbed onto Officer Holland in an attempt to resist." (Doc. 153-1, p. 24). The District Court's Order suggests that this fact was not analyzed, because Appellant only admitted that *Cross-Appellant testified he saw Appellant place hands* on Officer Holland (as opposed to admitting that *Appellant actually placed hands* on Officer Holland). However, the standard is the point of view of a reasonable officer – whether the officer could "reasonably perceive" it. *See, e.g., McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1246 (2003).

Cross-Appellee, holding a beer and a scooter, physically contacted Officer Holland. This could (no less than) arguably be interpreted as disorderly conduct, public intoxication, and perhaps even assault on a peace officer. Cross-Appellee's conduct while the officer was attempting to escort him out of the park too could be seen as disorderly conduct, obstruction of a peace officer while in the conduct of official duties, and again, public intoxication. When Cross-Appellant perceives that Cross-Appellee places his hands on Officer Holland during the escort, all these same legal transgressions are arguably present. Cross-Appellant is entitled to qualified immunity for having no less than arguable probable cause to believe Cross-Appellee

had broken the law.

**b. <u>The District Court Erred in Denying Qualified Immunity to Cross-Appellant with Respect to Cross-Appellee's Excessive Force Claim.</u>**

Given the facts of the case, Cross-Appellee cannot sustain an excessive force claim against Cross-Appellant. Reviewing this ruling *de novo*, the Court should reverse the District Court's order denying qualified immunity and summary judgment as to Cross-Appellee's excessive force claim.

**i. To the extent Cross-Appellee Alleges that Any Use of Force to Accomplish an Unlawful Arrest is Excessive, that Claim is Subsumed by his False Arrest Claim.**

Cross-Appellee has made clear he believes the force utilized was undertaken during the exercise of a false arrest. Given that, the excessive force claim is subsumed by the false arrest claim as an element of damages thereof. *Jackson v. Sauls,* 206 F.3d 1156, 1171 (11th Cir. 2000); *Williamson v. Mills*, 65 F.3d 155, 158-59 (11th Cir. 1995). Cross-Appellee's excessive force claim is subject to summary judgment on this ground alone.

> In *Williamson*, the defendant officer arrested the Cross-Appellee without probable cause and the Cross-Appellee claimed that "there was no need for any force as the force was used to accomplish an unlawful arrest." This Court held that the damages recoverable on Cross-Appellee's false arrest claim include damages suffered because of the use of force in effecting the arrest, that under these circumstances, Cross-Appellee's excessive force claim is subsumed in his false arrest claim, and thus there was no reversible error in the district court's grant

of summary judgment on the excessive force claim as a discrete claim. *Jackson*, 206 F.3d at 1171, n. 19 (internal citations and quotations omitted).

Cross-Appellee's excessive force claim is subject to summary judgment on this ground alone because any excessive force undertaken during an illegal arrest (which Cross-Appellee claims this was) is subsumed by the false arrest claim as an element of damages. *Id*.

**ii. There Was No Constitutional Violation, Because Cross-Appellant's Use of Force Was Reasonable.**

Should the Court turn to the actual reasonableness of the force here, the aforementioned facts support a finding of reasonable force. Regardless of how framed, Cross-Appellee ran into a police officer while holding an open container. Officer Holland attempted to escort Cross-Appellee off the premises, and Cross-Appellee resisted, ignoring the commands of Officer Holland. With all indicia of probable cause present (see Section X(1), hereinabove), Cross-Appellant went to effect Cross-Appellee's arrest, placed hands on him, and employed a leg sweep to tackle Cross-Appellee. Even in a lesser investigatory stop, the right to make such a stop carries with it the right to use some degree of physical coercion or threat thereof to effect it. *See Graham v. Connor,* 490 U.S. 386, 396 (1989).

The standard for assessing whether the level of force in a particular case is excessive "is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent

or motivation." *Id.* at 397. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* This approach allows "for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 396-97.

This Court has repeatedly emphasized that "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Vinyard v. Wilson,* 311 F.3d 1340, 1347 (11th Cir. 2002) (internal citations and quotations omitted). When a suspect's crimes include assault on a police officer, a very high level of force is permitted. *See Tennessee v. Garner,* 471 U.S. 1 (1985). "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." *Charles v. Johnson*, 18 F.4th 686, 699 (11th Cir. 2021) (internal quotations omitted).

In order to assist courts in applying this "objective reasonableness" standard, this Court "evaluates whether an officer's use of force is objectively reasonable by considering myriad factors, such as "(1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the extent of the injury inflicted and, (4) whether the force was applied in good faith or maliciously

and sadistically." *Moore v. Gwinnett County*, 967 F.2d 1495, 1498 (11th Cir. 1992) (quoting *Leslie v. Ingram*, 786 F.2d 1533, 1536 (11th Cir. 1986))." *Jackson v. Sauls,* 206 F.3d 1156, 1170 (11th Cir. 2000).

It is undisputed that Cross-Appellee, holding a scooter and a beer, ran into the back of Officer Holland, who was standing right next to Cross-Appellee and another officer. (Doc. 153-1, pp. 18-19). Cross-Appellee saw Officer Holland dispossess Cross-Appellee of his beer, and watched the next 30 seconds unfold, but did not hear everything that was said. While Cross-Appellee could not hear everything that was said, he did hear Officer Holland ask Cross-Appellee to "move…or, keep going." (Doc. 153-1, p. 35).

Officer Holland took hold of Cross-Appellee's arm and began escorting Cross-Appellee out of the park. (Doc. 153-1, pp. 8, 77-78). Instead of following the lawful commands of Officer Holland during that time, Cross-Appellee was "up in Holland's face." (Doc. 153-1, p. 35). And, it is undisputed what it was that Cross-Appellee was saying when he was up in Officer Holland's face:

- "What's going on?" (Doc. 149-1, p. 68).
- "Why are you treating me like that?" (Doc. 149-1, p. 68).
- "What is your issue…[w]hat's the problem?" (Doc. 149-1, p. 77).
- "Why are you being mean to me?" (Doc. 153-1, p. 38)

Cross-Appellant took hold of Cross-Appellee's arm, and took him to the

ground (Doc. 149-1, p. 78), "us[ing] [his] center of mass to take [Cross-Appellee's] center of – center of mass to the ground horizontally." (Doc. 149-1, p. 79).

There was no punching, hitting, kicking, stomping, biting, anything of the like. There was no use of a weapon – no baton, no taser, no gun. There was no bleeding or broken bones. The use of force here consists solely of Cross-Appellant attempting to take physical control of Cross-Appellee, and in doing so, going to the ground. The force was reasonable as a matter of law.

More, though Cross-Appellee claims he suffered a concussion from the encounter, it is clear that Cross-Appellant did not intend for that to happen. A law enforcement officer using reasonable force to arrest or control a person is not liable for accidental or unintended injury to the person caused by the use of force. *Estate of Phillips v. City of Milwaukee,* 123 F.3d 586, 595 (7th Cir. 1997); *Edwards v. Giles*, 51 F.3d 155, 157 (8th Cir. 1995); *Lockwood v. McCaskill*, 262 N.C. 663, 670 (1964); *See Stainback v. Dixon*, 569 F.3d 767, 773 n.7 (7th Cir. 2009) ("Evidence of the seriousness of [Cross-Appellee's] injury alone, without evidence of an objectively unreasonable act, cannot create a genuine issue of fact as to whether the Officers' actions were reasonable.").

Even if the Court finds the use of force "unnecessary," qualified immunity is still appropriate if the force was minimal, like here. *See, e.g., Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1560 (11th Cir. 1993) (finding that pushing the suspect into

a wall and putting him into a choke-hold was unnecessary, but a minimal use of force); *Jones v. City of Dothan, Ala.*, 121 F.3d 1456, 1460 (11th Cir. 1997) ("While use of force against Mr. Jones may have been unnecessary, the actual force used and the injury inflicted were both minor in nature.").

Thus, the District Court erred in denying Cross-Appellant's summary judgment motion as to Cross-Appellee's excessive force claim.

## VIII. CONCLUSION

As an initial matter, Appellees contend that Appellant's appeal should be dismissed for lack of jurisdiction. Nonetheless, Appellant's grounds for appeal are without merit and the District Court's rulings should be affirmed. However, the Court should reverse the denial of qualified immunity and summary judgment for Cross-Appellant as to Cross-Appellee's false arrest and excessive force claims.

Respectfully submitted this 24th day of July, 2025.

**HALL BOOTH SMITH, P.C.**

*/s/ Phillip E. Friduss*
R. DAVID WARE
Georgia Bar No. 737756
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
NICHOLAS A. KINSLEY
Georgia Bar No. 273862

*Counsel for Appellees*

## CERTIFICATE OF COMPLIANCE

The undersigned counsel certifies that this document complies with the word limit of F.R.A.P. 28.1(e)(2)(B)(i) because it contains 14,339 words, excluding those parts exempted by F.R.A.P. 32(f). The undersigned counsel further certifies that this document has been prepared with margins according to the rule, a font and point selections in accordance with by F.R.A.P. 32(a)(5)(A), specifically Times New Roman 14.

Respectfully submitted this 24th day of July, 2025.

**HALL BOOTH SMITH, P.C.**

*/s/ Phillip E. Friduss*
R. DAVID WARE
Georgia Bar No. 737756
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
NICHOLAS A. KINSLEY
Georgia Bar No. 273862

*Counsel for Appellees*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
Tel: (404) 954-5000
Fax: (404) 954-5020
dware@hallboothsmith.com
pfriduss@hallboothsmith.com
nkinsley@hallboothsmith.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served a copy of the within and foregoing **APPELLEES' / CROSS-APPELLANT'S AMENDED PRINCIPAL AND RESPONSE BRIEF** upon all parties to this appeal by U.S. mail, first class postage prepaid, on the following non-CM/ECF participant:

Justin T. Tolston
5900 Balcones Drive, Suite 100
Austin, TX 78731
402.889.9800
Justin.tolston@einji.org
jttolston@gmail.com
*Pro Se*

Respectfully submitted this 24th day of July, 2025.

**HALL BOOTH SMITH, P.C.**

*/s/ Phillip E. Friduss*
R. DAVID WARE
Georgia Bar No. 737756
PHILLIP E. FRIDUSS
Georgia Bar No. 277220
NICHOLAS A. KINSLEY
Georgia Bar No. 273862

*Counsel for Appellees*

191 Peachtree Street, NE
Suite 2900
Atlanta, Georgia 30303
Tel: (404) 954-5000
Fax: (404) 954-5020
dware@hallboothsmith.com
pfriduss@hallboothsmith.com
nkinsley@hallboothsmith.com